UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
THERESA WILSON,

                Plaintiff,

-against-                        **MEMORANDUM AND ORDER**
                                               Case No. 08-CV-70 (FB)(JO)

NEW YORK CITY, NEW YORK CITY
POLICE DEPARTMENT, EDWARD
EDWARDS, PAUL LICHTBAUM and
JOHN TROTTA,

                Defendants.
-----------------------------------------------------------x

*Appearances*:
*For the Plaintiff*:
GREGORY A. TSONIS, ESQ.
MATTHEW SCOTT PORGES, ESQ.
THOMAS RICOTTA, ESQ
Leeds, Morelli & Brown
One Old Country Road, Suite 347
Carle Place, NY 11514

*For the Defendants*:
ANDREZ SHUMREE CARBERRY, ESQ.
JAIME M. ZINAMAN, ESQ.
New York City Law Department
100 Church Street
New York, NY 10007

**BLOCK, Senior District Judge:**

        Theresa Wilson, a black female sergeant with the New York City Police Department ("NYPD"), alleges that her superiors—Lieutenant John Trotta, Captain Edward Edwards and Captain Paul Lichtbaum—discriminated against her on the basis of her race and gender. Proceeding under 42 U.S.C. § 1983 and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, she claims (I) that the individual defendants subjected her to discrete adverse employment actions, (II) that they subjected her to an "atmosphere of adverse employment actions," and (III) that NYPD is vicariously liable for

the NYSHRL violation, and liable for the § 1983 violation under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).[1]

Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated at oral argument on November 30, 2010, as elaborated below, the motion is granted.

I

Wilson's disparate treatment claims under § 1983 and the NYSHRL are both analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (§ 1983); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL). The Second Circuit has summarized that framework as follows:

> [T]he plaintiff bears the initial burden of establishing a prima facie case of discrimination. . . . If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action . . . . If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of . . . discrimination.

*Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008) (citations and internal quotation marks omitted). "Although intermediate evidentiary burdens shift back and forth under

---

[1]The Court is aware that the only proper municipal defendant is the City of New York. *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."). "NYPD" is used herein only for the sake of convenience.

2

this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To make out a *prima facie* case of employment discrimination, a plaintiff must show that "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Defendants concede that Wilson, a black woman, belongs to two protected classes and was qualified for her position, but argue that she has not satisfied the third and fourth elements.

## A. Adverse Employment Actions

"An adverse employment action is a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (citation, internal quotation marks and alterations omitted).

In the main, Wilson relies on a series of disciplinary actions (called "Command Disciplines," or "CDs") taken by her superiors:

3

- In August 2005, Lichtbraun issued Wilson a CD for not being at her assigned post.

- In September 2005, Edwards issued Wilson a CD for failing to make a required entry in the precinct command log.

- In October 2005, Edwards issued Wilson a CD for wearing her hair too long.

- In January 2006, Edwards issued Wilson a second CD for wearing her hair too long.

- In March 2006, Trotta issued Wilson CDs for (1) answering the telephone incorrectly and (2) acting discourteously towards him when he brought the issue to her attention.

- In May 2006, Trotta issued Wilson a CD for failing to file a required report.

After a hearing, an administrative commissioner found the January and March 2006 CDs substantiated, and docked Wilson 20 days of vacation pay as punishment. Defendants do not dispute that that was a "material loss of benefits" and, therefore, an actionable adverse employment action. The same is true of the August 2005 CD, which resulted in a loss of 2 hours' pay.

Wilson argues that the remaining CDs – along with a number of other minor violations that did not result in any CDs, as well as Trotta's choice of assignments for her – also constitute discrete adverse employment actions. The Court need not address that contention, however, because, as discussed in the next section, Wilson has failed to show

that *any* of the proffered adverse employment actions took place in circumstances giving rise to an inference of discrimination.[2]

**B. Inference of Discrimination**

"[A]n inference of discriminatory intent may be derived from a variety of circumstances." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009). Wilson has chosen the popular method of attempting to show that her supervisors treated her "less favorably than a similarly situated employee outside [her] protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Her approach fails for several reasons.

First, much of her proffer fails to demonstrate that she was treated differently *on account of her race or gender*. At oral argument, her counsel relied heavily on the claim that the accusations levied against her were false.[3] But evidence of falsity is not meaningful unless it also suggests that the true reason was discrimination. *Cf. St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (addressing the issue at the pretext stage). Wilson also offers evidence that others told her Edwards and Lichtbaum were out to get her. Leaving aside

---

[2]Wilson's alternative contention that the actions of her superiors, taken collectively, created an actionable "atmosphere of adverse employment actions" is addressed in Part II.

[3]Defendants argue that Wilson is collaterally estopped from challenging the veracity of at least those CDs that were addressed in the administrative hearing. They are probably incorrect: The issue at the administrative hearing was whether Wilson committed the charged conduct, while the issue here is whether the issuance of the CDs was motivated by discriminatory animus. It is at least conceptually possible that a CD could truthfully charge an employee with sanctionable conduct, yet still be motivated, at least in part, by the employee's race or gender. Given the Court's conclusion that Wilson has not raised an inference of discrimination in any event, it need not further opine on the issue.

the obvious hearsay problem, the evidence shows, at best, that Wilson was disliked; it sheds no light on the basis for the animosity. *See Montgomery v. Chertoff*, 2007 WL 1233551, at *13 (E.D.N.Y. Apr. 25, 2007) ("Plaintiff's proof may be probative of the fact that she was discriminated against because she was not liked, but such discrimination is not based on sex[.]").

Second, even where Wilson relies on evidence of disparate treatment *of employees outside her protected class*, she does not, as she is required to do, show that she and her proposed comparators were "similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). She argues, for example, that Trotta gave assignments outside her specialty (domestic violence) to her, but not to any white male specialized sergeants. The Court cannot say, however, that such conduct gave rise to an inference of discrimination without knowing the respective workloads of Wilson and the other sergeants. In the same vein, Wilson points out that she alone was cited in the August 2005 CD, even though she was traveling with eight other officers at the time. But she does not dispute that she was the only supervisor in the group. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) ("[Defendant] was entitled to hold lower-ranking employees to lower standards than those it applied to [plaintiff].").

Finally, where the evidence allows the Court to make meaningful comparisons, it simply does not support a claim of discrimination. Although Wilson claims that she was issued the September 2005 CD because she was a black and/or a woman, the undisputed evidence shows that Edwards issued six other CDs for precisely the same

6

conduct; five were issued to white men, and the sixth to a Hispanic man. Similarly, the record shows that Edwards issued CDs regarding hair length to two white women and one black man. Wilson attempts to skirt this problem by claiming that Edwards issued the two CDs to her because she was a black woman (i.e., black *and* a woman). However, the appropriate comparator for such a claim is not someone who was outside one or the other protected class, but someone who was outside both—a white man; Wilson offers no instances of Edwards excusing long-haired white men from the personal appearance policy.

In sum, the Court concludes, after a through review of the record, that Wilson has offered insufficient evidence to make out the fourth element of her *prima facie* case.

## II

As an alternative to her claim of discrete adverse employment actions, Wilson argues that the Court should collectively consider all of her superiors' conduct, regardless of whether any particular action would support a stand-alone claim. The Court agrees that incidents too minor to support discrete claims may nevertheless be considered as evidence of a hostile environment.[4] But whether a claim is based on a discrete adverse employment action or a hostile environment, the plaintiff must show that the actor was motivated by discriminatory animus. *See Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 241 (2d Cir. 2007) ("A plaintiff must . . . demonstrate that she was subjected to the hostility because

---

[4]While Wilson refers to such a claim as one based on an "atmosphere of adverse employment actions," it is, in the Court's view, more properly understood as a traditional hostile environment claim. For purposes of this case, the difference between the two terms is purely semantic.

7

of her membership in a protected class." (citation and internal quotation marks omitted)). For the same reasons that Wilson has failed to establish that she was subject to discrete adverse employment actions based on her race and gender, she has failed to establish that she was subject to a hostile environment on those grounds.

### III

As Wilson has not offered sufficient evidence for a reasonable jury to find that the individual defendants discriminated against her, NYPD cannot be vicariously liable under the NYSHRL. Similarly, where, as here, a *Monell* claim is based solely on the actions of individual municipal employees, municipal liability cannot exist if the individual employees have not violated § 1983. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm.").

### IV

Defendants' motion for summary judgment is granted. Accordingly, the case is dismissed.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
December 9, 2010

8